THE STATE, EX REL. NATIONAL BROADCASTING COMPANY, INC., APPELLANT, *v.* CITY OF CLEVELAND ET AL., APPELLEES.

[Cite as State, ex rel. Natl. Broadcasting Co., *v.* Cleveland (1988), 38 Ohio St. 3d 79.]

(No. 87-757—Submitted June 8, 1988—Decided July 27, 1988.)

*Vorys, Sater, Seymour & Pease, C. William O'Neill* and *Charles P. Hurley,* for appellant.

*Marilyn G. Zack,* director of law, *Nick Tomino* and *Barbara R. Marburger,* for appellees.

*John T. Corrigan,* prosecuting attorney, *Patrick J. Murphy* and *Colleen C. Cooney,* urging affirmance for *amicus curiae,* Prosecuting Attorney of Cuyahoga County.

*J. Anthony Sawyer,* law director, and *Arthur W. Harmon, Jr.,* urging affirmance for *amici curiae,* city of Dayton et al.

WRIGHT, J. It is well-settled that in order for a writ of mandamus to issue the relator must demonstrate (1) a clear legal right to the relief prayed for; (2) respondents are under a clear duty to perform the acts; and (3) relator has no plain and adequate remedy in the ordinary course of law. *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, 6 OBR 50, 51, 451 N.E. 2d 225, 226-227, citing *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 42, 8 O.O. 3d 36, 37, 374 N.E. 2d 641; *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 15 O.O. 3d 3, 399 N.E. 2d 66, paragraph one of the syllabus; *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus.

The city argues that NBC had no clear legal right of inspection and that the city had no clear legal duty to allow inspection of the records at issue because the records were excepted from release as confidential law enforcement investigatory records and/or trial preparation records as defined

by R.C. 149.43. For the reasons set forth below, we disagree.

### I

In a democratic nation such as ours, it is not difficult to understand the societal interest in keeping governmental records open. At early common law, citizen access to governmental information was severely restricted. Indeed, a citizen could inspect documents only with the consent of the crown or by showing that inspection was necessary to maintain or defend a legal action. See Cross, The People's Right to Know (1965) 25-26.

From this historical perspective, it is easy to see why many states have enacted statutes that have substantially broadened the common-law approach. The rationale behind Ohio's public records law was succinctly stated by this court in *Dayton Newspapers* v. *Dayton* (1976), 45 Ohio St. 2d 107, 74 O.O. 2d 209, 341 N.E. 2d 576, where we held:

" 'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same.' " *Id.* at 109, 74 O.O. 2d at 211, 341 N.E. 2d at 577-578 (quoting from *State, ex rel. Patterson,* v. *Ayers* [1960], 171 Ohio St. 369, 14 O.O. 2d 116, 171 N.E. 2d 508).

This language must be the starting point of our analysis. As one commentator has stated: "The Ohio Supreme Court * * * has provided a fairly workable standard which should lead the public and its officials to the conclusion that most, though not all, governmental records should be made available for public inspection." Brown, The Right to Inspect Public Records in Ohio (1976), 37 Ohio St. L. J. 518, 536.

In 1963, when the General Assembly codified the public's right to access of government records, R.C. 149.43 provided, in pertinent part:

"All public records shall be open at all reasonable times for inspection. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time." (130 Ohio Laws 155.)

While R.C. 149.43 did not specifically refer to law enforcement records, the statute generally defined a public record as "any record required to be kept by any governmental unit * * * except records pertaining to physical or psychiatric examinations * * * and records the release of which is prohibited by state or federal law."

In *Wooster Republican Printing Co.* v. *Wooster* (1978), 56 Ohio St. 2d 126, 10 O.O. 3d 312, 383 N.E. 2d 124, we were asked to determine whether law enforcement investigatory records were public records under the statute. The court, reading the public records law along with the then newly enacted Privacy Act (R.C. Chapter 1347), held at paragraph four of the syllabus that:

"Police and other law enforcement investigatory records are not subject to compulsory disclosure provisions of R.C. 149.43."

In apparent reaction to this decision, the General Assembly amended R.C. 149.43 to expressly state that law enforcement investigatory records were, subject only to narrow exceptions, within the compulsory disclosure provisions of R.C. 149.43 (138 Ohio Laws, Part I, 245-246). The statute, which has since been amended on a number of other occasions, now provides in relevant part:

"(A) As used in this section:

"(1) 'Public record' means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

"* * *

"(4) 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."

This court has acknowledged that R.C. 149.43 was amended to reverse the result reached in *Wooster Republican Printing, supra,* and to subject law enforcement investigatory records to disclosure under the public records law. In *State, ex rel. Beacon Journal,* v. *Univ. of Akron* (1980), 64 Ohio St. 2d 392, 394, 18 O.O. 3d 534, 535-536, 415 N.E. 2d 310, 312, we stated:

"In *Wooster Republican Printing Co.* v. *Wooster, supra* (56 Ohio St. 2d 126), paragraph four of the syllabus, this court held that: 'Police and other law enforcement investigatory records are not subject to the compulsory disclosure provisions of R.C. 149.43.' We reached this result construing former R.C. 149.43 together with R.C. 1347.08(F) as it then stood. Both statutory provisions have undergone substantial legislative amendment (under Am. Sub. S.B. No. 62) so that *they now clearly permit disclosure of law enforcement investigatory records under certain circumstances.*" (Emphasis added, footnotes omitted.)

Therefore, law enforcement investigatory records must be disclosed unless they are excepted from disclosure by R.C. 149.43.

II

As an integral part of this decision, we must determine which party has the burden of proving whether the records at issue are or are not excepted from release pursuant to R.C. 149.43.

In *Beacon Journal, supra,* we noted the parallels between the Ohio public records law and the federal Freedom of Information Act. The federal courts have consistently held that the government bears the burden of proving the material withheld from disclosure falls within an exception of the Freedom of Information Act. *Currie* v. *Internal Revenue Serv.* (C.A. 11, 1983), 704 F. 2d 523; *Exxon Corp.* v.

*Fed. Trade Comm.* (C.A.D.C. 1980), 663 F. 2d 120; *Kuehnert* v. *FBI* (C.A. 8, 1980), 620 F. 2d 662. We agree.

Several cogent reasons support this rule. First, a party requesting disclosure of a record is at a distinct disadvantage when challenging a government's claim of an exception to the public records law. Conversely, the custodian of the record has knowledge of the contents of the record.

Second, placing the burden of proof on the government would be consistent with the general rule concerning statutory exceptions. Under Ohio law, a person asserting an exception is required to prove the facts warranting such an exception. *State, ex rel. Schaefer,* v. *Bd. of Cty. Commrs.* (1967), 11 Ohio App. 2d 132, 40 O.O. 2d 296, 229 N.E. 2d 88.

Finally, placing the burden of proof on the government would also be consistent with this court's approach of a strict construction of the exceptions of R.C. 149.43 and the resolution of doubt in favor of disclosure. *Dayton Newspapers, supra; State, ex rel. Plain Dealer Publishing Co.,* v. *Krouse* (1977), 51 Ohio St. 2d 1, 5 O.O. 3d 1, 364 N.E. 2d 854; *Wooster Republican Printing, supra; Beacon Journal, supra.*

Therefore, we hold that a governmental body refusing to release records has the burden of proving that the records are excepted from disclosure pursuant to R.C. 149.43.

### III

We now consider whether the records at issue are excepted from release under R.C. 149.43(A)(2) and/or (A)(4).

### A

The city argues that the records at issue are confidential law enforcement investigatory records whose release would create a high probability of disclosure of specific investigatory work product. See R.C. 149.43(A)(2) (c).

The limited record before this court strongly suggests that most, if not all, of the records at issue herein are not law enforcement investigatory records as contemplated by the statute. Instead, it is apparent that the records involve the city's monitoring and discipline of its police officers. These internal investigations were not undertaken based upon a specific suspicion of criminal wrongdoing. They were routinely conducted in every incident where deadly force was used by a police officer. This court has held that personnel records reflecting the discipline of police officers are required to be disclosed pursuant to R.C. 149.43. *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632; *Barton* v. *Shupe* (1988), 37 Ohio St. 3d 308, 525 N.E. 2d 812.

The city suggests that "specific investigatory work product" means any record which was "* * * generated by the Police and Safety Department investigators assigned to investigate a particular incident * * *." A similar definition was considered and rejected by this court in *Beacon Journal, supra.* In that case, the University of Akron, claiming that disclosure of the police investigative records concerning the rape and subsequent death of an Akron University student would reveal specific investigatory work product, wrongfully refused the Akron Beacon Journal's request to inspect the records.

The specific investigatory work product exception, R.C. 149.43(A)(2) (c), protects an investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans. The exception does not encompass the objective facts and observations he has recorded. The content of the record,

not the fact that it was created during the investigation of a specific crime, determines whether material may be withheld as a "specific investigatory work product" exception.

Specific investigatory work product can best be defined as material that demonstrably contains or reveals the theories, mental impressions, and thought processes of the investigator. This definition is consistent with this court's philosophy that "* * * exceptions to disclosure enumerated in R.C. 149.43 are to be construed strictly against the custodian of public records and that all doubt should be resolved in favor of this disclosure." *State, ex rel. Plain Dealer Publishing Co.,* v. *Lesak* (1984), 9 Ohio St. 3d 1, 4, 9 OBR 52, 54, 457 N.E. 2d 821, 823 (Celebrezze, C.J., concurring).

**B**

We turn next to the city's argument that the records at issue are excepted from disclosure as trial preparation records, as set forth in R.C. 149.43(A)(4).

The city argues that the records sought by NBC were specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding. In support of its claim, the city argued below that six of the twelve incidents were the subject of civil suits against the city, its officials, and employees. While this may support the inference that it may be reasonable for the city to anticipate civil litigation as a consequence of the use of deadly force by its police officers against its citizenry, it does not establish that the records in question were *specifically* compiled in anticipation of the litigation. See *Barton, supra.*

In fact, it appears that part of these records was gathered in order to satisfy the requirement of General Police Order No. 22-83. This order re-

quires all police shootings to be investigated regardless of the circumstances. Significantly, the order makes no mention of potential litigation.

This court has emphasized that the statute requires the documents to have been *specifically* compiled in reasonable anticipation of litigation to qualify as an exception as trial preparation records. *Beacon Journal, supra.*

A similar issue has been addressed in other decisions. In *In re Westchester Rockland Newspapers, Inc.* v. *Mosczydlowski* (1977), 58 App. Div. 2d 234, 396 N.Y. Supp. 2d 857, for example, a newspaper sought to compel city officials to produce a police report prepared by the internal affairs division of the police department concerning the events surrounding the death of a prisoner in the city jail. The city sought to avoid disclosure on the grounds, *inter alia,* that litigation over the incident was anticipated. The court rejected the city's argument:

"* * * [R]espondents can find no comfort in the exemption of material prepared for litigation from the ambit of the Freedom of Information law for the subject police report does not qualify as material prepared solely for such purpose. Rather, it had multiple purposes which included, *inter alia,* enabling the District Attorney to determine whether any crime or offense had been committed by anyone and enabling the Police Department, itself, to determine whether any of its personnel were guilty of breach of duty and whether its procedures were adequate to prevent any recurrence. It may also be said that this investigation was conducted in the regular course of official police business. Since all of these nonlitigation purposes do not, by themselves, constitute independent grounds for exemption, the report cannot be deemed exempt from disclosure

* * *." *Id.* at 237-238, 396 N.Y. Supp. 2d at 859.

We reached a similar conclusion in *Barton, supra,* where we stated at 309, 525 N.E. 2d at 813:

"While any prudent public officer would be aware that this investigation might lead to litigation — administrative, civil, or criminal — the record resulting from the investigation was not 'specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding.' "

While Ohio's public records law does not require the record to be compiled *solely* in anticipation of litigation, this court has consistently held that "* * * exceptions to disclosure enumerated in R.C. 149.43 are to be construed strictly against the custodian of public records and that all doubt should be resolved in favor of disclosure." *Lesak, supra,* at 4, 9 OBR at 54, 457 N.E. 2d at 823.

In the instant case, the city failed to present any facts that would support a finding that the reports were prepared *specifically* for litigation purposes. In its decision, the court below cited no specific facts that would establish that the records were prepared specifically for such purpose. The record contains no such evidence.

The implication of the opinion below is that all police investigatory records qualify as trial preparation records in anticipation of criminal or civil litigation. When a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question. If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released. The data and records in question should be sealed and preserved as part of the record for possible appellate review.

IV

Upon review of the investigatory process and the index of records at issue, portions of the records may well be found to contain some "specific investigatory work product" and may conceivably include "trial preparation records." However, the fact that excepted materials may be contained in records which also contain materials subject to disclosure does not relieve the government of its duty to disclose the nonexcepted material. See *Dispatch Printing Co., supra.*

We cannot determine which portions of the city records should be released due to the limited nature of the appellate record before us. Therefore, we reverse the denial of the writ and remand this cause to the court of appeals for further proceedings in accordance with the criteria and procedure noted herein.

*Judgment reversed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and DOUGLAS, JJ., concur.

H. BROWN, J., not participating.