THE STATE, EX REL. TOLEDO BLADE
CO., *v.* TELB, SHERIFF, ET AL.

(No. 90-0324—Decided
February 8, 1990.)

Court of Common Pleas of
Lucas County.

*Fritz Byers,* for relator.

*Anthony G. Pizza,* prosecuting at-
torney, and *Lynn B. Jacobs,* for
respondents.

MELVIN L. RESNICK, J. This man-
damus action, filed by the Toledo Blade
Company (hereinafter "Blade") pur-
suant to R.C. 149.43(C), seeks to com-
pel the respondents, Lucas County
Sheriff James A. Telb and Jon Rogers,
custodian of the internal affairs
records of the sheriff's office, to com-
ply with the Ohio public records law,
R.C. 149.43. Specifically, the Blade
seeks to inspect and copy the internal
affairs file of a deputy sheriff.

In response to that request, the
respondents, in conjunction with a
member of the Lucas County Pros-
ecutor's office, reviewed the file and
redacted substantial portions of it,
which they believed to be excepted
from disclosure under R.C. 149.43.
Upon a review by the Blade of the
redacted file it is the Blade's conten-
tion that the respondents redacted
from the record material which is not
excepted from disclosure and that the
respondents violated their legal duty to
redact according to law.

Counsel have entered into certain
stipulations, which may be summar-
ized as follows:

(1) The Blade publishes a daily
newspaper of general circulation, en-
titled "The Toledo Blade."

(2) James A. Telb is the Sheriff of
Lucas County, Ohio. He is the legal
custodian of the records that are the
subject of this action.

(3) Jon Rogers is employed by the
Lucas County Sheriff's Department.
He is the Director of the Internal Af-
fairs Bureau in that department and is
the actual custodian of the records that
are the subject of this action.

(4) Peter Zieroff is employed as a
deputy sheriff by the Lucas County
Sheriff's Department.

(5) The Internal Affairs Bureau
("the bureau") of the Lucas County
Sheriff's Department maintains files
of the regular activities of the bureau,
including files for deputy sheriffs who

have been investigated by the Internal Affairs Bureau.

(6) The bureau maintains a file that contains the records of all internal affairs investigations regarding Zieroff.

(7) On January 10, 1990, the Blade requested that the custodian of Zieroff's internal affairs file make that file available to the Blade for inspection and copying in accordance with R.C. 149.43.

(8) On or about January 12, 1990, the custodian of Zieroff's internal affairs file made available to the Blade what was said to be an entire copy of that file with extensive portions of the file redacted.

(9) On January 23 and 25, 1990, counsel for the Blade met with counsel for the sheriff's department to discuss the bases for the extensive redaction of Zieroff's internal affairs file. At these meetings, counsel for the Blade requested that the respondents discharge their legal obligation to redact from the file material excepted from disclosure by R.C. 149.43(A) and to disclose the nonexcepted material.

(10) Unless excepted from disclosure by provisions in R.C. 149.43, the internal affairs file of Deputy Sheriff Zieroff is a "public record" within the meaning of R.C. 149.43.

The matter was heard on February 1, 1990 and arguments were had on February 2, 1990.[1] The evidence introduced by the parties at that hearing included the following:

(1) The stipulations listed above.

(2) The entire internal affairs file of Deputy Sheriff Peter Zieroff without redactions (introduced under seal) (Exhibit A).

(3) Zieroff's entire internal affairs file, as it was redacted by the respondents (Exhibit B).

(4) The union contract of the deputy sheriffs.

(5) The policy and procedures of the Internal Affairs Bureau of the Lucas County Sheriff's Department.

(6) The "rights" statement given to a deputy under investigation by the Internal Affairs Bureau.

(7) Testimony from Jon Rogers, the Director of the Internal Affairs Bureau.

Arguments were then had by all parties regarding the issues raised and the cause was submitted for adjudication.

The Ohio public records law, R.C. 149.43, requires all public offices of the state to make all public records available for inspection to any person at all reasonable times. R.C. 149.43(B). The term "public record" is broadly defined by the statute. Decisions of the Supreme Court of Ohio make clear that the definition is broad, and that unless a record is expressly excepted from disclosure by a provision of the law, the record is public and is subject to disclosure under the law. See, *e.g., State, ex rel. Beacon Journal Publishing Co.,* v. *Univ. of Akron* (1980), 64 Ohio St. 2d 392, 18 O.O. 3d 534, 415 N.E. 2d 310. "* * * [T]he exceptions to disclosure as enumerated in R.C. 149.43 are to be construed strictly against the * * * custodian * * * and *any* doubts shall be resolved in favor of disclosure."[2] (Emphasis added.) *State,*

---

[1] It should be noted that the court, with the agreement and consent of counsel, granted the bargaining agent of the deputy sheriffs, District 2A, MEBA, permission to intervene as *amicus curiae* for purposes of argument only.

[2] The use of the words "any doubts" was subsequently "changed" to "all doubts." See *State, ex rel. Plain Dealer Publishing Co.,* v. *Lesak* (1984), 9 Ohio St. 3d 1, 4, 9 OBR 52, 54, 457 N.E. 2d 821, 823 (Celebrezze, C.J., concurring), and cited in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland* (1988), 38 Ohio St. 3d 79, 84, 526 N.E. 2d 786, 790.

*ex rel. Outlet Communications, Inc.,* v. *Lancaster Police Dept.* (1988), 38 Ohio St. 3d 324, 328, 528 N.E. 2d 175, 178, citing *State, ex rel. Plain Dealer Publishing Co.,* v. *Krouse* (1977), 51 Ohio St. 2d 1, 2, 5 O.O. 3d 1, 1-2, 364 N.E. 2d 854, 855.

"A governmental body refusing to release records has the burden of proving that the records are excepted from disclosure by R.C. 149.43." *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland* (1988), 38 Ohio St. 3d 79, 526 N.E. 2d 786, paragraph two of the syllabus. Even if a public record contains some material that is excepted from disclosure, the governmental body is obligated to disclose the nonexcepted material, after redacting the excepted material. *Id.* at 85, 526 N.E. 2d at 792, citing *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632.

The parties have stipulated that the internal affairs file sought by the Blade is a public record unless it is excepted from disclosure by provisions in the law. Accordingly, this case does not raise any issue regarding the general sweep of the public records statute.

The issues that are raised, however, are critical, because they go to the core of the statute and its processes: First, what is the obligation of a governmental official with respect to responding to requests under the Public Records Act to inspect and copy public records? Second, what constitutes a reasonable promise of confidentiality which implicates the exceptions to disclosure set forth in R.C. 149.43(A)(2)? Third, assuming a promise of confidentiality is reasonable, what is the extent of the exceptions relating to that promise? Fourth, what is the meaning of the "medical records" exception set forth in R.C. 149.43(A)(3)? Fifth, what constitutes "specific investigatory work product" under R.C. 149.43(A)(2)(c)?

The answers to the first and third questions are simple, and they are related. First, a governmental body has the legal duty to disclose all materials in public records that are not specifically excepted from disclosure by an explicit provision of the public records law. Second, if a witness is reasonably promised confidentiality, that witness' statement may be redacted to protect the witness' identity.

The Supreme Court has made the existence of that duty clear, if indeed any clarification was required, given the fairly detailed provisions of the law. In this connection, governmental officials must be held to the knowledge that the exceptions to disclosure are narrowly phrased by the legislature, and that the Supreme Court has honored that legislative intention by holding that the exceptions must be narrowly construed.[3]

The sheriff contends, in essence, that he has discharged his duty by

---

[3] Lest there be any doubt about the legislature's intent regarding the public records status of police records generally, it must be observed that the legislature amended the public records law in response to the decision of the Supreme Court in *Wooster Republican Printing Co.* v. *Wooster* (1978), 56 Ohio St. 2d 126, 10 O.O. 3d 312, 383 N.E. 2d 124. In *Wooster,* the court had held that police and other law enforcement investigatory records are not subject to compulsory disclosure under R.C. 149.43. *Id.* at paragraph four of the syllabus. In apparent response to that holding, the General Assembly amended the law to state expressly that law enforcement investigatory records are, subject only to narrow exceptions, within the compulsory disclosure provisions. The relevant history is discussed in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland, supra,* at 81-82, 526 N.E. 2d at 788-789.

determining that the record contains excepted material, and submitting the entire record to the court for review and redaction as appropriate. This contention is incorrect and it must be firmly rejected so that the sheriff and other governmental officials do not take this course of action again. Contrary to the sheriff's view, the holding in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland, supra,* is not an invitation to public officials to delegate their duties under the Public Records Act to the courts. In *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland,* the Supreme Court clearly announced the legal duty when it held as follows:

"* * * [T]he fact that excepted materials may be contained in records which also contain materials subject to disclosure does not relieve the government of its duty to disclose the nonexcepted material. * * *" *Id.* at 85, 526 N.E. 2d at 792.

This language cannot be read to mean that the government has discharged its legal obligation merely by reviewing a record to determine if it contains excepted material and by submitting the records to the court if such material is present. As a general position, then, the sheriff's approach cannot be countenanced.

The sheriff contends further that he undertook to redact the records requested by the Blade in accordance with law, and submitted only disputed portions to the court. This secondary contention similarly fails. It simply is not supported by the evidence. The court has reviewed with care the records produced by the sheriff, following redaction. It is clear to the court that the respondents did not undertake in good faith to redact *only* those materials that are explicitly excepted from disclosure. Rather, the respondents redacted entire portions of records which could not conceivably be construed to be excepted from disclosure. The evidence at trial makes unmistakable that this approach prevailed at the time the respondents actually undertook the redaction.

The central issue regarding redaction relates to the respondents' contention that persons who provide information to the Internal Affairs Bureau are promised confidentiality. From that contention, the respondents argue that all information provided by confidential informants is excepted from disclosure. This contention is directly contrary to the express wording of the statute. The material provisions are R.C. 149.43(A)(2)(a) and (b).[4]

Under these provisions, material is excepted from disclosure "only to the extent that the release of the record would create a high probability of disclosure of * * *:

"(a) The identity of a * * * witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, *which information would reasonably tend to disclose his identity*[.]" (Emphasis added.) R.C. 149.43(A)(2)(a) and (b).

These provisions make clear that the exception exists to protect the *identity* of the information source, not the information he provides. Any broader reading of the exception is contrary to law and is unsupported.

In spite of the court's assumption, for the purpose of this part of the discussion, that promises of confidentiality had been given, and that they were reasonable, it is abundantly clear from the evidence that the respondents have not met their burden of proof in

---

[4] There is no claim here that R.C. 149.43(A)(2)(d), relating to threats to the life or physical safety of a confidential information source, is involved.

this regard. They have failed to meet that burden with respect to lay witnesses and deputy witnesses.

Simply stated, the respondents have failed to adduce any proof that would even tend to demonstrate that the material redacted from the witness statements would lead to disclosure of the identity of the confidential informant. The court has reviewed the documents contained in Exhibit A, and compared them with similar documents, as redacted, in Exhibit B, and it is clear that the redactions of the respondents went far beyond those necessary to protect the identity of the persons giving the statements. On the ground of the respondents' failure to carry their burden of proof regarding the applicability of the statutory exceptions, then, the Blade is entitled to judgment and is entitled to the materials it seeks.

In sum, the respondents' position, that if confidentiality has been promised, the entire statement of the informant is excepted from disclosure, is without merit. At hearing, the respondents wisely did not make much effort to support this reading of the law.[5] The law is clear that only the portions of records that are expressly excepted from disclosure may be redacted.

With those preliminary issues decided, the court now undertakes to determine the more specific issues regarding the statements actually made in the file at issue in this case, and whether any promises of confidentiality were made, and, if made, whether such promises were reasonable. The parties presented considerable evidence on the issue of whether the promises of confidentiality made by the respondents were reasonable.

The court must note that the testimony produced by the respondents on this issue is entirely assumptive and is completely generalized. The testimony is that respondents automatically generalized. The testimony is that respondents automatically give promises of confidentiality to every lay witness, including the complainant, who makes a statement, and that they do not first determine whether the promise is necessary. Under this circumstance, such promises are not reasonable. The legislature's use of the word "reasonable" in R.C. 149.43(A)(2)(b) makes clear that something more than a routine procedure is necessary to establish that a statement was given under circumstances that will except it from disclosure under the public records law. Moreover, it is axiomatic that a governmental official, such as respondent Rogers, is without authority administratively to undertake a practice that would have the effect of nullifying the application of a state law to an entire category of public records.

Respondent Rogers admitted that, from the reports and statements themselves, which are in evidence, there is no way to tell if the statements were given conditionally on a promise of confidentiality. Moreover, Rogers could not state that any statement the bureau received from any witness would have been unavailable, or even different in any material respect, if the promise of confidentiality had not been given. Accordingly, with respect to lay witnesses, the respondents have failed to establish that the promises of confidentiality made to the lay witnesses

---

[5] At one point, counsel for respondents urged that a statement must be taken in its entirety and that any redaction of it would transform the statement into something other than the "information" provided by the witness, within the meaning of R.C. 149.43(A)(2)(b). This argument is wholly without merit. The legislature's language is not subject to such a tortuous reading.

who gave statements in the cases contained in Exhibit A were reasonable.[6] Therefore, the respondents have failed to establish that the exception to disclosure set forth in R.C. 149.43(A)(2)(b) applies to those statements, and the Blade is entitled to those statements in their entirety.

The result is the same with respect to the statements of the deputy sheriffs, although the reasons supporting disclosure are considerably more compelling. The testimony of Rogers that he assumes that the deputies assume that the statements are confidential is patently insufficient to meet the burden of proving that a *promise* of confidentiality was made. An unspoken assumption, rooted in precedent, falls far short of the requisite promise. Indeed, there is no credible testimony that any deputy sheriff who gave any statement in any investigation involved in this case was ever given any promise of confidentiality.

Contrary to respondents' contention, the policy and procedure of the Internal Affairs Bureau does not establish that deputies are given a promise of confidentiality, nor does it set forth any criteria guiding the investigator's decision as to whether such a promise should be given, even if a request for confidentiality has been made by the witness.[7] Similarly, there is nothing in the union contract which suggests or requires that a promise of confidentiality be given.[8]

The provision on page three of the internal affairs policy and procedure statement does not constitute a promise of confidentiality. Even if the language in question were to be considered some form of commitment, it could not stand as a bar to disclosure under the Public Records Act. A governmental body cannot, by means of a generalized, universal assurance of confidentiality for witnesses, insulate its records from the public scrutiny

---

[6] For the purpose of this discussion, the court accepts Rogers' statement that all lay witnesses are promised confidentiality.

[7] The policy and procedure state, on page three, as follows:

"All reports submitted to the Internal Affairs Bureau are investigative reports, confidential in nature, and will remain in the Internal Affairs Bureau's files."

This provision has no relationship to any reasonable promise of confidentiality which may or may not have been given to a complaining officer or lay witness.

[8] The union contract provides no support for respondents' position on the argument advanced by *amicus.* Curiously, it appears from the testimony that the procedures for hearings on Internal Affairs Bureau charges do not conform to the requirements of the contract. Although that issue is not material in this litigation, it does affect the credibility of respondents' contention that they cannot operate the system any other way and still preserve its "integrity."

For example, the contract guarantees to charged officers the chance to cross-examine witnesses. It appears, however, that the bureau does not disclose the identity of witnesses from whom statements were taken, or even present the entire statement. How the right to cross-examine has any meaning in this setting is difficult to fathom.

Similarly, the contract provides that a charged officer will be advised of his constitutional rights if the investigation involves a potentially criminal matter. Rogers testified that he does not comply with this provision. The effect of this failure to comply on the statements is uncertain. That Rogers would fail to inform suspects of their rights, and then use that failure as an excuse for not providing evidence of criminal activity to the proper authorities suggests a portion of what is insidious about procedures of this kind that operate secretly on the basis of confidential information.

that is commanded by the Act. To hold otherwise would permit a governmental body effectively to nullify the Act by administrative fiat, a result that is inconsistent with the basic principles of the rule of law in our society.

In *State, ex rel. Dispatch Printing Co.*, v. *Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632, the Supreme Court held that a collective bargaining agreement cannot supplant state law by requiring that records be kept confidential contrary to the Public Records Act. That holding embodies the fundamental legal principle that parties to a private contract cannot nullify state law, and that any contractual provision purporting to do so is a legal nullity.[9]

In this regard, the court notes its profound concern over the testimony offered by respondents that deputy sheriffs will decline to provide information to the investigators in the Internal Affairs Bureau if the deputies are not given assurances of confidentiality. Even assuming the truth of this testimony, one must wonder whether the deputies' refusal to provide statements is lawful. They may well be under a legal duty to provide such statements, at least to the extent the conduct under investigation may have criminal implications. In any event, the evidence establishes that the policies and procedures of the Internal Affairs Bureau *require* that "[a]ny incident observed by any employee of the department *must* be reported immediately." (Emphasis *sic*.) Even if deputies are reluctant to provide statements, the proper recourse for the sheriff is to enforce this salutary rule. If recalcitrance on the part of deputies continued, the sheriff would have a clear basis for discipline of the reluctant deputies. The critical point is that the sheriff's contention that he must indulge the assumption of confidentiality to obtain statements founders on his failure to enforce his own policy requiring statements.

In sum, the respondents have failed to show that promises of confidentiality made to lay witnesses were reasonable, or that any such promise was ever made to deputy witnesses. The court wants to make it emphatically clear that generalized, routinized and automatic promises of confidentiality, whether they are the result of a term in a union contract, provisions in

---

[9] Another tangential issue raised in the hearing relates to the Fifth Amendment rights of officers under investigation by the Internal Affairs Bureau. The Blade is correct in contending that the issue is immaterial to this case because Zieroff's statements were produced for the Blade without editing, and there is no claim that any of the witness statements were made under circumstances that deprived those persons of their constitutional rights. Nonetheless, the issue is troubling, because it might well arise in future litigation of this kind. This court's concerns for the potential constitutional problems arising from a procedure that compels a deputy sheriff to relinquish his constitutional rights in response to a putative and dubious promise of "immunity" are well expressed by Justice Douglas' caution in *Henneman* v. *Toledo* (1988), 35 Ohio St. 3d 241, 245-246, 520 N.E. 2d 207, 211-212, at fn. 4:

"*Amicus curiae*, Toledo Police Patrolmen's Association, asserts in its brief that members of the police force must respond to questions asked of them in any internal investigation or face disciplinary action, including possible dismissal. It is argued that disclosure of statements made under such circumstances violates the constitutionally guaranteed right against self-incrimination. * * * While we express no opinion on whether the department's policy violates the Fifth Amendment to the United States Constitution and its guarantee against self-incrimination, it could be argued that any such department policy or bargaining contract provision would be fraught with constitutional difficulties of immense proportions."

policy statements, or a routine administrative act of an investigator, can not constitute reasonable promises of confidentiality within the meaning of the public records law.

Governmental agencies must limit their use of promises of confidentiality to individual cases where such promises are required to further the purpose of the specific investigation. Before a promise of confidentiality can be reasonable, it must be made on the basis of an individualized determination by the official that the promise is necessary to obtain the information. Where possible, the request for confidentiality should be in writing. That document should also state the specific reasons that the investigator concluded, *in that case*, that the promise was necessary in order to obtain the information, and that the information could not have been obtained without such a promise. A contemporaneous record of this kind will make further litigation of this issue considerably simpler, and it will permit governmental officials to argue more credibly that the specific promise of confidentiality was reasonable.

As a secondary position, the respondents attempt to argue that the specific statements of confidential informants at issue in this case were redacted entirely because nothing short of full redaction would protect the identity of the informant. That argument is entirely belied by the testimony of Rogers and by the documents contained in Exhibits A and B. It is apparent beyond any question that the respondents did not review the statements of witnesses to determine what specific material must be redacted to protect the identity of the witness. Rather, the pattern of redactions on the exhibits reviewed by the court clearly indicates that the respondents redacted the entire statement of every witness (other than Zieroff), without any regard to the express limitations of the statute.

Thus, for the reasons set forth above, the Blade is entitled to all witness statements that appear in Exhibit A, as well as the summaries of these statements that appear throughout that exhibit. In other words, with the exception of the documents withheld by the respondents on the basis of the definition of "medical records" or the exception contained in R.C. 149.43(A)(2)(c), relating to investigative work product, the Blade is entitled to all documents in the file. The two remaining categories will be discussed separately.

First, with respect to the material under the headings "Findings of Fact," the respondents' contention is that this material constitutes the subjective impressions of the investigator and therefore is excepted from disclosure. The Blade contends, on the other hand, that the material under this heading constitutes final determinations of fact by the person to whom the sheriff had delegated the authority to bring internal affairs charges where warranted by the evidence. As such, the Blade contends, this material is not "subjective work product"; rather, the Blade argues this material constitutes statements of official governmental conclusions.

The court has reviewed all of the material redacted by the respondents under this category. The issue is controlled by the language of the Supreme Court of Ohio in paragraph three of the syllabus in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland, supra.* That language is clear and this court has neither the power nor the inclination to change, expand, or limit it. The material in question does not constitute the "investigator's deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans.* * *" *Id.*

Rather, the material in question constitutes the final conclusion by the investigator regarding the incident with respect to what happened and whether the deputy should be charged. In other words, the findings are official conclusions regarding official action to be taken. In no significant legal sense are these conclusions subjective. They are, in fact, the official act of a governmental agent charged with making the final decision. As such, they are part of the public record and they do not fall within any exception in the statute.

Finally, the Blade seeks three documents that the respondents withheld on the basis of their reading of the statutory definition of "medical record."[10] The Blade contends these documents contain the opinions of psychologists which were sought by the sheriff for the purpose of assisting him in making a decision regarding Zieroff's suitability for continued employment as a deputy sheriff. As such, the Blade contends they are not "medical records" within the meaning of R.C. 149.43(A)(3). The respondents urge a broad reading of that exception and contend that the documents sought by the Blade are part of a course of diagnosis that relates to the medical condition of Zieroff.

The disposition of this issue depends on the wording of the statute. In pertinent part, it states as follows:

" 'Medical record' means any document or combination of documents * * * that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient *and* that is generated and maintained in the process of medical treatment." (Emphasis added.)

To fall within this exception, a record must pertain to a medical diagnosis *and* be generated and maintained in the process of medical treatment. The respondents' argument fails because they do not meet the conjunctive requirements of the statute, in that the records were not maintained in the process of medical treatment. Rather, the documents themselves make clear that, in each case, the report of the psychologist was sought as part of the sheriff's decision-making process regarding Zieroff's employment. They were not sought in the process of medical treatment.[11]

Based on the foregoing, the court concludes that the sheriff has not met his legal obligation under the Public Records Act. Specifically, the sheriff failed to undertake to redact the internal affairs file of Peter Zieroff in accordance with settled legal requirements. The sheriff redacted the record to delete from it all witness statements although the law is clear that only so much of those statements as would disclose the identity of the witness is protected (assuming the promise of confidentiality is reasonable). This act cannot be justified by reference to any legal position. The statute is clear, and there is no case that supports the respondents' position.

The evidence suggests that, rather than attempt to discharge his clear legal duty, the sheriff chose instead to transfer that duty to the court, asking it to review the record and redact it according to law. This the court is unwill-

---

[10] At the outset of final argument, counsel for the Blade withdrew the Blade's request for two other documents.

[11] Because of this holding, the court is not called upon to decide the issue of what constitutes a "medical" record. To decide that issue, the court would have to evaluate the legislature's use of the term "medical" in the statute, and the presumptions that attach to statutory construction, as well as consider the use of the same term in the Ohio Rules of Evidence. See, *e.g.*, Evid. R. 803(4).

ing to do, and the court will not abide this effort. The court is aware that, under paragraph four of the syllabus in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland, supra,* the court is the final arbiter as to whether information is subject to public disclosure under the public records law. That function must not be invoked routinely, however, and it must not be invoked by governmental bodies to avoid discharging the duty that is placed on them to make their records available. See *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland, supra* (38 Ohio St. 3d), at 85, 526 N.E. 2d at 792. If, after the public office reviews its record and has attempted in good faith to redact only those portions that are excepted under the law, there remains a genuine issue regarding the application of the statutory exceptions, such issues may properly be submitted to the court.

It is apparent that the respondents submitted this matter to the court rather than undertake their legal obligations. It is this court's opinion that the respondents, rather than risk any criticism or complaints from witnesses, deputies, or the union in making required disclosures, have "passed the buck" to this court. Having done so, they must accept the consequences of the risk taken. Such premature litigation cannot be permitted. Wholesale redaction, or refusal to produce public records without a court order, as was done in this case, creates an impermissible burden on the courts, which are already overburdened with equally or more important matters that must be disposed of within time limits that are creating a strain on the judicial system in its efforts to meet those obligations for the protection of society.

Thus, the court will issue the declaration sought by the Blade that the respondents have violated R.C. 149.43 by refusing to redact from Deputy Sheriff Zieroff's internal af-fairs record any information excepted from disclosure by R.C. 149.43 and to disclose the remaining material.

The court will also issue a writ of mandamus compelling the respondents to comply with R.C. 149.43 by making Deputy Sheriff Zieroff's internal affairs file available for inspection and copying in accordance with that statute.

Finally, the statute permits an award of attorney fees to the party which instituted the mandamus action. R.C. 149.43(C). The award is discretionary. *State, ex rel. Fox,* v. *Cuyahoga Cty. Hosp. System* (1988), 39 Ohio St. 3d 108, 111, 529 N.E. 2d 443, 446. In determining the propriety of an award of attorney fees, the court must determine whether the party which obtained the writ of mandamus has conferred "a sufficient benefit [on] the public" and the "reasonableness of respondents' refusal to comply." *Id.* at 112, 529 N.E. 2d at 447.

By prevailing in this action, the Blade has conferred on the public a substantial benefit. The Public Records Act exists for the public to assure that any member of the public can obtain access to any public record upon request. The writ issued in this case confirms the primacy of that right, and rejects positions by a governmental official that would have the effect of undermining the right. The legislature did not intend that any person seeking access to public records could, by the unreasonable act of the governmental official, be required to file a lawsuit to obtain the records sought. Access is prescribed by the statute. That access would be frustrated, and in many cases negated, if governmental bodies were permitted to resist requests for access until a court orders that access be provided. Not all persons interested in the operation of their government have the financial wherewithal to pursue legal actions of this kind. Therefore by

obtaining relief in this case, the Blade has conferred on the public a significant benefit that is precisely in accordance with the intention of the Ohio General Assembly.

Moreover, as stated above with respect to the two issues discussed, the respondents' position has no foundation in statutory or decisional law. Rather, it appears that the sheriff determined that, rather than discharge his legal duty to redact in accordance with law, he would delegate that duty to the court. Such actions cannot be condoned. Indeed, they must be discouraged to assure that in the future, in response to requests for access to public records, public officials conscientiously discharge their legal duties and do not put citizens to the expense of litigation to obtain from the government what they are entitled to under law merely by request. Only then will the Public Records Act operate as the legislature clearly intended it to operate, to preserve to the public their right of access to the records of the government.

Accordingly, an award of attorney fees is proper under the standards announced by the Supreme Court of Ohio. Rather than set this matter for hearing, and invite the Blade to submit its petition for fees, with accompanying affidavits and briefs, the court will award to the Toledo Blade attorney fees in the amount of $1,000. The court is fully mindful that this amount is in all probability substantially less than the fees actually incurred by the Blade in this action. At the same time, the court notes that, at least as to certain limited issues, the respondents' positions were not wholly unsupportable, and that certain of the issues raised appear to be issues of first impression. If either side would rather proceed to hearing on the issue of the amount of fees to which the Blade is entitled as a result of the court's disposition of this issue, it may file a motion for reconsideration.

This opinion shall serve as a judgment entry of the court and a writ of mandamus shall issue to the Sheriff of Lucas County and Jon Rogers, the respondents herein.

*Writ allowed.*