THE STATE EX REL. VINDICATOR PRINTING COMPANY ET AL., APPELLANTS,
*v.* WATKINS, TRUMBULL COUNTY PROSECUTING ATTORNEY, APPELLEE.

[Cite as *State ex rel. Vindicator Printing Co.
v. Watkins* (1993), 66 Ohio St.3d 129.]

(No. 92–190—Submitted February 10, 1993—Decided April 14, 1993.)

130

*Manchester, Bennett, Powers & Ullman, Stephen T. Bolton* and *Joseph R. Young, Jr.,* for appellants.

*Dennis Watkins,* Trumbull County Prosecuting Attorney, *Patrick McCarthy,* Assistant Prosecuting Attorney, and *Martin F. White,* for appellee.

*Paul L. Cox,* urging affirmance for *amicus curiae,* Fraternal Order of Police of Ohio, Inc.

*Joseph T. Deters* and *William E. Breyer,* urging affirmance for *amicus curiae,* Ohio Prosecuting Attorneys Assn.

*Baker & Hostetler* and *David L. Marburger,* urging reversal for *amici curiae,* Beacon Journal Publishing Co., Plain Dealer Publishing Co., Dayton Newspapers, Inc. and Ohio Newspaper Assn.

*Reinhart Law Office* and *Harry R. Reinhart; Gold, Rotatori, Schwartz & Gibbons Co.* and *John S. Pyle,* urging reversal for *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

---

*Per Curiam.*

I

The present action is brought pursuant to R.C. 149.43. It provides in relevant part:

"(A) As used in this section:

"(1) *'Public record' means any record that is kept by any public office,* including, but not limited to, state, county, city, village, township, and school district units, *except* medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, *trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.*

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

"* * *

"(4) 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

"(B) All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division. * * *" (Emphasis added.)

"Confidential law enforcement investigatory records" and "trial preparation records" are not defined in R.C. 149.43 beyond the sections previously cited. However, Crim.R. 16(B)(2) sets forth certain information not subject to disclosure to criminal defendants pursuant to discovery. The rule provides as follows:

"*Information Not Subject to Disclosure.* Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case or of statements made by witnesses or prospective witnesses to state agents."

Thus, a criminal defendant is precluded, pursuant to Crim.R. 16(B)(2), from obtaining either the attorney work product of the prosecutor or statements of witnesses to the police. This court considered the interplay of Crim.R. 16(B)(2) and R.C. 149.43 in *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313 ("*Clark I*"). *Clark I* involved an action in mandamus

instituted by a criminal defendant in aid of his attempt to obtain post-conviction relief. In reversing the denial of the writ by the court of appeals this court observed as follows:

"It may well be that the exceptions to disclosure found at R.C. 149.43(A)(2) and (4) evince a legislative intent that R.C. 149.43 not be utilized to frustrate the proper administration of criminal justice, but this cannot alter Clark's status as a person. If, indeed, the General Assembly intends to restrict those in Clark's situation to such information as is discoverable under Crim.R. 16, it need only amend the exceptions to disclosure presently found at R.C. 149.43 to make them co-extensive with the limitations on discovery found in Crim.R. 16.

"Accordingly, we hold that a criminal defendant who has exhausted the direct appeals of his conviction may avail himself of R.C. 149.43 to support his petition for post-conviction relief. But, see, *State, ex rel. Scanlon, v. Deters* (1989), 45 Ohio St.3d 376, 544 N.E.2d 680.

"The dissent contends that it is illogical to construe Crim.R. 16 and R.C. 149.43 as prohibiting disclosure of certain records in connection with a defendant's original trial, but as allowing disclosure of those same records in connection with a post-conviction proceeding.

*"The narrow issue in this case is whether R.C. 149.43 is available to a criminal defendant in a post-conviction proceeding, and it has not been necessary to address the possible application of R.C. 149.43 to original trial proceedings."* (Emphasis added.) *Id.,* 54 Ohio St.3d at 57, 560 N.E.2d at 1314–1315.

In seeking to limit the holding in *Clark I* to post-conviction actions, appellee and *amici* in support of affirmance contend (1) the disclosure of the documents sought by appellants will allow not only the press, but criminal defendants, to obtain access to trial preparation materials of the prosecuting attorney despite the non-discoverable nature of such information pursuant to Crim.R. 16(B)(2); (2) such disclosure obtained by a criminal defendant through utilization of R.C. 149.43 would dispense with the duty of the defendant in a criminal proceeding to provide reciprocal discovery; (3) the disclosure of witness statements will endanger the witnesses' security during the pending criminal case and make them less likely to provide information to law enforcement personnel; and (4) the disclosure of inflammatory material to the press and its publication thereby will deny a criminal defendant the opportunity to receive a fair trial.

In attempting to distinguish *Clark I,* the appellate court below observed:

"This court concludes that the legislative intent of R.C. 149.43, as it relates to original criminal trial proceedings, was not designed to provide a nonparty

or the public, prior to the commencement of trial, access to records which may not be disclosed to a criminal defendant until the actual trial. Accordingly, it is this court's position that in cases which have yet to proceed to trial, R.C. 149.43 should reasonably be read in concert with the applicable limitations provided by Crim.R. 16(B). Otherwise, R.C. 149.43 could serve to infringe upon a defendant's right to a fair trial, or frustrate the proper administration of criminal justice in the initial trial proceedings."

The reliance by the appellate court on the interplay between Crim.R. 16(B)(2) and R.C. 149.43 is misplaced for several reasons. As an initial matter, relators-appellants herein are not criminal defendants to which Crim.R. 16(B)(2) would apply. Second, Biros does not seek disclosure of the documents at issue in the instant action. Accordingly, there exists no occasion to consider any alleged inconsistency between Crim.R. 16(B)(2) and R.C. 149.43. Finally, assuming that both provisions must be harmonized, much of the same analysis undertaken in the context of a Crim.R. 16 discovery request would apply to the *in camera* determination with respect to whether the requested documents fall within one of the exceptions to disclosure contained in R.C. 149.43. Any decision regarding the release of the documents at issue herein must therefore be measured by the standards set forth in R.C. 149.43.

## II

In addition to its reliance on Crim.R. 16, however, the court of appeals subjected the documents to the individualized scrutiny required by this court in *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786 ("*NBC I*"). As mentioned above, the appellate court, following its review of the documents at issue, determined that certain items were subject to disclosure (Exhibits AAA) and other items were exempt from disclosure (Exhibits BBB). The determination that the documents contained in Exhibits BBB were exempt from disclosure was predicated upon the court's belief that they constituted "confidential law enforcement investigatory records" as defined in R.C. 149.43(A)(2) and "trial preparation records" as defined in R.C. 149.43(A)(4). With respect to the former exception to disclosure, this court, in *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 52, 552 N.E.2d 635, 636–637, remarked as follows:

"To determine whether a record is exempt from public disclosure under R.C. 149.43, a two-step analysis is required. First, is the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of four kinds of information specified in R.C. 149.43(A)(2)?"

In *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 566 N.E.2d 146 (*"NBC II"*), this court concluded that the appellate court below had erred in its determination that internal investigations of police misconduct were routine in nature and, thus, not within the confidential-law-enforcement-investigatory-record exception to disclosure. Rejecting the approach pursued by the court of appeals, this court observed that the focus was not whether the documents were compiled in a routine manner, but whether they fit one of the statutory exceptions found in R.C. 149.43(A)(2). In particular, the court made reference to *State ex rel. Dayton Newspapers, Inc. v. Rauch* (1984), 12 Ohio St.3d 100, 12 OBR 87, 465 N.E.2d 458, wherein an autopsy report was determined to be exempt from disclosure despite the "routine" nature of a homicide investigation. See *NBC II, supra*. Similarly, the records at issue herein would be exempt from disclosure if they pertain to a law enforcement matter of a criminal nature and they fall within one of the categories set forth in R.C. 149.43(A)(2)(a), (b), or (c). The court of appeals below concluded that some of the materials encompassed within Exhibits BBB constituted records specifically compiled in the course of a routine criminal investigation the release of which would create a high probability of disclosure of investigatory work product.

Moreover, the court of appeals concluded that the remainder of the records encompassed within Exhibits BBB where trial preparation records exempt from disclosure pursuant to R.C. 149.43(A)(4). In *NBC I, supra*, we rejected a similar claim of exemption on the basis that records generated for multiple purposes did not fall within the exception because such records were not "specifically compiled in reasonable anticipation of or in defense of, a civil or criminal action or proceeding * * *." In the present action, however, the records sought by appellants constitute appellee's entire prosecutorial file relative to the criminal case of *State v. Biros*. Inasmuch as Biros was the sole target of the investigation from its inception, any records relative thereto would constitute trial preparation records. Therefore, the inquiry of the appellate court must necessarily involve a determination of whether the records at issue concern that investigation or are totally unrelated thereto. After its *in camera* inspection, the court of appeals concluded that the documents at issue did, in fact, constitute trial preparation records relative to Biros' criminal prosecution.

In evaluating whether the appellate court erred in its determination that the records which comprise Exhibits BBB are exempt from disclosure pursuant to R.C. 149.43(A)(2) and (A)(4), we are guided by the previous holdings of this court in *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147, and *State ex rel. Clark v. Toledo* (1992), 62 Ohio St.3d 452, 584 N.E.2d 662. In those decisions, this court acknowledged that the reversal of

the factual determinations of the appellate court relative to disclosure made during its *in camera* review would be inappropriate absent an abuse of discretion.

After a careful review of the documents which comprise Exhibits BBB, we conclude that the court of appeals did not abuse its discretion in finding them exempt from disclosure. The records at issue were both compiled for the sole purpose of initiating the prosecution of Biros and clearly constitute either information supplied by witnesses to whom confidentiality has been reasonably promised, R.C. 149.43(A)(2)(b), or specific confidential investigatory techniques or procedures or specific investigatory work product. Moreover, most of the materials to which the request of appellants was directed was information generated at the direction of appellee under the auspices of HIPU. Accordingly, the documents at issue fall within either or both of the exceptions to disclosure contained in R.C. 149.43(A)(2) and (A)(4).

## III

Appellee and *amici* in support of affirmance herein have advanced several bases for exempting the documents in question from public disclosure. For the reasons previously stated, we have rejected, in the present context, any reliance upon Crim.R. 16 as affording an additional exception to disclosure. It is our belief that any problems encountered by the prosecution regarding the disclosure of documents to members of the public or the press which would arguably be exempt from disclosure pursuant to Crim.R. 16(B) may be adequately addressed in the context of the exemptions contained in R.C. 149.43(A)(2) and (A)(4). In particular, the exemptions contained in these sections appear more than adequate to address the concern that disclosure of certain documents would jeopardize the criminal prosecution.

Likewise, the intimation of *amicus* Ohio Association of Criminal Defense Lawyers that full disclosure under R.C. 149.43 would eliminate the alleged practice of prosecuting attorneys to selectively release only that information which is favorable to the case of the state is without merit. It would appear that the vigilant supervision of the trial court and the risk of reversal of any resulting conviction posed by such disclosures constitute a sufficient check on prosecutorial misconduct of this nature. Of greater significance, however, is the concern expressed by *amicus* Fraternal Order of Police that disclosure of certain information prior to or during the pendency of the criminal action will deny a defendant his constitutional right to a fair trial. Kenneth Biros did not seek to intervene in the instant action and prevent disclosure on this basis. Nevertheless, the Fraternal Order of Police correctly observes that disclosure

of certain inflammatory materials may prejudice the rights of a criminal defendant to an impartial determination of his guilt or innocence.

Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution secure to a criminal defendant the right to a fair trial. In *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, the United States Supreme Court recognized that pervasive, unfair and prejudicial news coverage could effectively deprive a criminal defendant of this right. In this regard the court observed:

"If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." 384 U.S. at 363, 86 S.Ct. at 1522, 16 L.Ed.2d at 620.

In *Sheppard,* the Supreme Court was greatly distressed by the disclosure to the news media of information which did not and could not constitute competent evidence at trial. The prejudicial effects of such disclosures and the dissemination thereof effectively foreclosed any possibility that the criminal defendant therein could receive a fair trial before an impartial jury.

Many devices are available to a trial court to prevent the prejudicial effect of such pretrial publicity, including a change of venue and sequestration of a jury. However, if during the pendency of the criminal proceeding, such measures have not been undertaken or are ineffective in assuring an impartial determination of the issues and a danger of material prejudice to a criminal defendant is posed thereby, a criminal defendant clearly possesses standing to challenge the release of such information in an action brought pursuant to R.C. 149.43. Inasmuch as such disclosures would prejudice the defendant's rights under the state and federal Constitutions, the information at issue would constitute "records the release of which is prohibited by state or federal law." Where a subsequent *in camera* inspection reveals that release of the records would prejudice the right of a criminal defendant to a fair trial, such information would be exempt from disclosure pursuant to R.C. 149.43(A)(1) during the pendency of the defendant's criminal proceeding.

For the reasons stated herein, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

A.W. SWEENEY and RESNICK, JJ., concur.

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur in judgment only.

DOUGLAS J., dissents.

WRIGHT J., dissents with opinion.

WRIGHT, J., dissenting. The majority has held that all of the material contained in Exhibits BBB is exempt from disclosure under R.C. 149.43(A). This finding is manifestly incorrect because some of this material is the product of general investigations and contains objective facts observed by public officials. This kind of information is *not* exempt as specific investigatory work product or trial preparation material under R.C. 149.43(A). See *State ex rel. Coleman v. Cincinnati* (1991), 57 Ohio St.3d 83, 566 N.E.2d 151; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786. The materials contained in these exhibits are protected from disclosure *only* if they fit within the limited exceptions in R.C. 149.43(A). Some items in the exhibits do not fit any of these limited exceptions.

I do agree with the majority that Crim.R. 16 is not triggered in this case. R.C. 149.43 provides the public with a substantive right; this court's interpretation of R.C. 149.43, therefore, will not be influenced by the Ohio Criminal Rules. See *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313.

I fully understand the tensions that arise when a pretrial request like the one in *State of Ohio v. Kenneth Biros*, Trumbull County Common Pleas Court case No. 91 CR 87, is made. These tensions appear to motivate the majority's opinion. I believe, however, that balancing the public's right to government records with a prosecutor's desire for complete control over information in criminal cases must be done by the General Assembly, not the courts. Until then, I believe this court must continue to interpret the public records statute according to its literal language.

This case should be remanded to the court of appeals to conduct a proper review of the materials in Exhibits BBB. Thus, I must respectfully dissent.