[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 350.]

THE STATE EX REL. WHIO-TV-7 *v*. LOWE ET AL.

THE STATE EX REL WDTN-TV-2, APPELLANT, V. LOWE ET AL., APPELLEES.

[Cite as *State ex rel. WHIO-TV-7 v. Lowe*, 1997-Ohio-271.]

————————————

*Public records—Information that a criminal prosecutor has disclosed to defendant for discovery purposes pursuant to Crim.R. 16 is not thereby subject to release as a "public record" pursuant to R.C. 149.43.*

————————————

Information that a criminal prosecutor has disclosed to the defendant for discovery purposes pursuant to Crim.R. 16 is not thereby subject to release as a "public record" pursuant to R.C. 149.43.

————————————

(Nos. 95-2224 and 95-2356—Submitted September 10, 1996—Decided January 22, 1997.)

IN MANDAMUS.

APPEAL from the Court of Appeals for Montgomery County, No. 15450.

————————————

{¶ 1} These two cases arise out of the same circumstances. In case No. 95-2224, relator WHIO-TV-7 filed in this court an original action in mandamus. In case No. 95-2356, appellant WDTN-TV-2 appealed the decision by the Montgomery County Court of Appeals denying appellant's complaint in mandamus.

{¶ 2} On July 18, 1995, Therressa Jolynn Ritchie reported to a Dayton, Ohio 911 operator that her four-year-old daughter Samantha was missing. The local media, including both relator and appellant in the cases *sub judice*, extensively covered the disappearance. On July 22, 1995, law enforcement investigators found

Samantha's body in a water-filled pit on the grounds of an abandoned foundry near her neighborhood. On August 3, 1995, Therressa Jolynn Ritchie and Ernest Vernell Brooks were arrested on various charges involving Samantha. On August 31, 1995, the Montgomery County Grand Jury indicted Ritchie for murder, gross abuse of a corpse, tampering with evidence, inducing a panic, and making a false alarm. The grand jury indicted Brooks for gross abuse of a corpse, tampering with evidence, and obstructing justice. On September 14, 1995, Brooks pled guilty to the three felony counts for which he had been indicted.

{¶ 3} On August 10, 1995, counsel for appellant WDTN-TV-2 wrote a letter to respondent-appellee Ronald Lowe, Sr., Chief of the Dayton Police, requesting that he grant appellant access to any and all "public records concerning the Therressa Jolynn Ritchie case * * * including, but not limited to: incident reports; relevant written or recorded statements of witnesses or defendants; written or recorded summaries of any oral statements made by witnesses or defendants; the prior criminal records of the defendants or witnesses; any tangible objects, documents or photographs; and any results of any mental examinations performed on the defendants, including polygraph results." On August 28, 1995, WDTN-TV-2 filed in the Montgomery County Court of Appeals a complaint for a writ of mandamus requesting that the court compel appellee Lowe to release the records. On September 20, 1995, the court of appeals granted the motions of both the Montgomery County Prosecutor and Ritchie to intervene as party respondents. The court of appeals granted WHIO-TV-7's motion to participate as an *amicus curiae*. On November 2, 1995, the court of appeals denied the application for a writ of mandamus. On November 17, 1995, WDTN-TV-2 appealed that decision to this court. The cause is now before this court upon an appeal as of right.

{¶ 4} The companion case, No. 95-2224, presents similar facts. On September 15, 1995, counsel for relator WHIO-TV-7 requested respondent Ronald Lowe, Sr., Chief of the Dayton Police, to permit the inspection and copying of any

written or recorded statements made by defendants Brooks and Ritchie, any written summaries of any oral statements made by the defendants, any photographs, any police reports, any result or reports of physical or mental examinations or scientific tests, and a list of names and addresses of all witnesses in the matter. On September 20, 1995, counsel for WHIO-TV-7 and counsel for WDTN-TV-2 made the same request of Mathias H. Heck, Jr., Montgomery County Prosecutor, and David M. Franceschelli, Assistant Prosecuting Attorney. On November 1, 1995, WHIO-TV-7 filed in this court a complaint in mandamus requesting that the court compel respondents Lowe, Heck, and Franceschelli to release the records.

{¶ 5} At this time, respondents-appellees have released only the following documents:

(1) Dayton police arrest report for Therressa J. Ritchie with her Social Security Number redacted;

(2) Arraignment information sheet for Ritchie with her Social Security Number and "remarks for arraignment" redacted;

(3) Dayton police arrest report for Ernest Vernell Brooks with his Social Security Number redacted;

(4) Arraignment information sheet for Brooks with his Social Security Number and "remarks for arraignment" redacted;

(5) Arrest record for Ritchie with her Social Security Number displayed; and

(6) Arrest record for Brooks with certain unspecified information redacted but with his Social Security Number displayed.

{¶ 6} On January 17, 1996, this court in case No. 95-2224 granted respondent Ritchie's motions to intervene and to consolidate the two cases.

{¶ 7} The parties agree that certain requested information does not exist. The parties now agree that the records sought "consist of the following described documents, to the extent that the same have been disclosed to either counsel for

3

Ritchie or to counsel for Brooks, or both, pursuant to Crim.R. 16(B)":

(1) Written or recorded statements made by Ritchie and/or Brooks;

(2) Written summaries of any oral statements made by Ritchie and/or Brooks;

(3) Photographs;

(4) Police reports in addition to the redacted arrest reports and arraignment information sheets described above;

(5) Results or reports of physical or mental examinations and scientific tests made in connection with this matter; and

(6) A list of the names and addresses of all witnesses.

_____

*Porter, Wright, Morris & Arthur, Robert E. Portune, Thomas L. Czechowski* and *Linda S. Holmes*, for relator in case No. 95-2224.

*Pickrel, Schaeffer & Ebeling*, *Andrew C. Storar* and *Michael W. Sandner*, for appellant WDTN-TV-2 in case No. 95-2356.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Carley J. Ingram*, Assistant Prosecuting Attorney, for respondents Heck and Franceschelli in case No. 95-2224, and appellee Montgomery County Prosecutor's Office in case No. 95-2356.

*J. Anthony Sawyer*, Director of Law, for respondent Lowe in case No. 95-2224, and appellee Lowe in case No. 95-2356.

*Bieser, Greer & Landis*, *Michael W. Krumholtz* and *David P. Williamson*, for intervening respondent Ritchie in case No. 95-2224, and appellee Ritchie in case No. 95-2356.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 8} This case presents the issue of whether information that the criminal

prosecutor has disclosed to the defendant for discovery purposes pursuant to Crim.R. 16, and therefore ordinarily would not be considered to be work product or trial preparation materials, is precluded from release to the public pursuant to the public records doctrine.

{¶ 9} Appellant and relator argue that because the prosecution has already disclosed to the defendant the subject information pursuant to the criminal discovery rules, the information cannot be deemed "work product" and thus is subject to release pursuant to Ohio's public records doctrine, R.C. 149.43. Appellees and respondents contend that simply because the prosecutor discloses information to the defendant pursuant to Crim.R. 16(B), that information does not automatically become disclosable to the public pursuant to R.C. 149.43. All parties cite our decision in *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraphs three and five of the syllabus, in support of their assertions.

{¶ 10} Crim.R. 16(B) requires the prosecuting attorney to disclose certain information to the criminal defendant upon the defendant's request. This evidence includes any statement of the defendant or co-defendant, the defendant's prior record, and documents and tangible objects, any reports of examination and tests, any witness names and addresses and their criminal records, and any evidence favorable to the defendant. Crim.R. 16(B)(1)(a) through (f). The prosecutor must also allow for the defendant's *in camera* inspection of any witness's statement. Crim.R. 16(B)(1)(g).

{¶ 11} The purpose behind the Rules of Criminal Procedure "is to remove the element of gamesmanship from a trial." *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451, 383 N.E.2d 912, 915. As such criminal discovery is a matter solely between the prosecutor and the defendant. See, generally, *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3, 511 N.E.2d 1138, 1140. The rules governing discovery do not envision a third party's access to the information

exchanged. As the United States Court of Appeals for the Eleventh Circuit stated in *United States v. Anderson* (C.A. 11, 1986), 799 F.2d 1438, 1441:

"Discovery is neither a public process nor typically a matter of public record. Historically, discovery materials were not available to the public or press. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-34, 104 S.Ct. 2199, 2207-08, 81 L.Ed.2d 17[, 26-27] (1984) (pretrial interrogatories and depositions 'were not open to the public at common law'); *Gannett Co. v. DePasquale*, 443 U.S. 368, 396, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608[, 632] (1979) (Burger, C.J., concurring) ('[I]t has never occurred to anyone, as far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants.'). Moreover, documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private. Marcus, *Myth and Reality in Protective Order Litigation*, 69 Cornell L.Rev. 1, 15 (1983).

"If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe. Not only would voluntary discovery be chilled, but whatever discovery and court encouragement that would take place would be oral, which is undesirable to the extent that it creates misunderstanding and surprise for the litigants and the trial judge. Litigants should not be discouraged from putting their discovery agreements in writing, and district judges should not be discouraged from facilitating voluntary discovery."

{¶ 12} We agree with the foregoing that discovery should be encouraged and that public disclosure would have a chilling effect on the parties's search for and exchange of information pursuant to the discovery rules.

{¶ 13} By contrast, the purpose of Ohio's Public Records Act, R.C. 149.43,

6

is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy. *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 420, 667 N.E.2d 1223, 1226-1227; see *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 81, 526 N.E.2d 786, 788. However, there are certain governmental activities that would be "totally frustrated if conducted openly." *Press-Enterprise Co. v. California Superior Court* (1986), 478 U.S. 1, 8-9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10. Criminal discovery is one of those governmental activities that would be frustrated if subjected to the required disclosure contemplated by R.C. 149.43. If all information exchanged is subject to complete public disclosure, then parties may cease open exchange. This would thwart entirely the objective of removing "the element of gamesmanship from a trial." *Howard*, 56 Ohio St.2d at 333, 10 O.O.3d at 451, 383 N.E.2d at 915. We therefore hold that information that a criminal prosecutor has disclosed to the defendant for discovery purposes pursuant to Crim.R. 16 is not thereby subject to release as a "public record" pursuant to R.C. 149.43.

**{¶ 14}** Relator also argues that the records must be released because of the public's First Amendment right to information regarding the trial. In *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 27, 104 S.Ct. 2199, 2204, 81 L.Ed.2d 17, 23, the United States Supreme Court considered a trial court's protective order prohibiting the litigants from publishing, disseminating, or using certain information obtained through pretrial discovery in any way except where necessary to prepare for trial. The Supreme Court noted that the danger of abusing the liberal pretrial discovery rules by publicly releasing information that is irrelevant and could be damaging to reputation and privacy is great and thus the court held that the governmental interest in preventing such abuse is substantial. *Id.* at 34-35, 104 S.Ct. at 2208-2209, 81 L.Ed.2d at 28. The court also noted that pretrial discovery is not a public component of a trial and any controls on the discovery process do not prevent the public dissemination of information gathered through means *other*

than discovery. *Id.* at 33-34, 104 S.Ct. at 2207-2208, 81 L.Ed.2d at 27. Accordingly the court held that the limitation on "'First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved,'" *id.* at 32, 104 S.Ct. at 2207, 81 L.Ed.2d at 26, quoting *Procunier v. Martinez* (1974), 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224, 240, and thus the protective order did not violate the First Amendment.

{¶ 15} The foregoing reasoning supports both a protective order as considered in *Seattle Times Co.* and this court's denial of a writ of mandamus prohibiting public dissemination of information exchanged through pretrial discovery in the case *sub judice*. Accordingly, appellant's and relator's First Amendment rights have not been violated by denial of access to the information in question.

{¶ 16} For the above reasons, the writ of mandamus is denied in case No. 95-2224 and the judgment of the court of appeals is affirmed in case No. 95-2356.

*Writ of mandamus denied in case No. 95-2224*

*and judgment affirmed in case No. 95-2356.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

STRATTON, J., concurs separately.

The State ex rel WDTN-TV-2. Appellant, v. Lowe et al., Appellee.

_____

**STRATTON, J., concurring.**

{¶ 17} The court's decision today strikes a careful balance between the public's right to know and the need to guard the fundamental integrity and fairness of a trial for both the defendant and the state.

{¶ 18} Appellant and relator focus on the jury process and the curative powers of a judge to correct pretrial publicity problems generated by publicizing the discovery records at issue, such as the use of voir dire and venue changes to keep the jury pool untainted. However, a more serious issue which affects the integrity of the trial itself, and which no judicial order can cure, is the tainting of witness testimony from witness exposure to the publicized information.

{¶ 19} During trial, witnesses are separated to keep their testimony untainted, prevent collusion, or prevent unintended, subconscious shading of their testimony because of other knowledge gained about the case. If a witness learns through the media of the confession of a defendant, statements by other witnesses, test results, or expert witness reports, the witness's testimony may become tainted and unreliable. Witnesses may not only use the publicized information to consciously bolster the prosecution's or defense's case, but also may be subconsciously influenced by this information so as to shade their testimony as a result of perceptions and beliefs newly formed from exposure to the publicized information. Once a witness is tainted, the problem cannot be reversed. The court correctly struck a balance between the public's right to know and the integrity of the trial itself.

_____