[Cite as *State ex rel. Davila v. Bellefontaine*, 2011-Ohio-4890.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO, EX REL,
EDWIN DAVILA,

        RELATOR-APPELLANT,               CASE NO.  8-11-01

        v.

CITY OF BELLEFONTAINE, ET AL.,        O P I N I O N

        RESPONDENTS-APPELLEES.

Appeal from Logan County Common Pleas Court
Trial Court No. CV 09 07 0361

**Judgment Affirmed**

**Date of Decision:   September 26, 2011**

APPEARANCES:

      *William E. Walker*  **for Appellant**

      *Mark R. Weaver and Mark H. Troutman* **for Appellees**

**SHAW, J.**

{¶1} Relator-appellant, Edwin Davila ("Davila"), appeals the December 6, 2010 judgment of the Common Pleas Court of Logan County, Ohio, granting summary judgment in favor of the respondent-appellees, the City of Bellefontaine, Ohio, Mayor Adam Brannon, and Police Chief Brad K. Kunze (collectively hereinafter "the respondents").

{¶2} On April 29, 2009, Davila sent a letter addressed to the "Bellefontaine Police Department Chief of Police Brad K Kunze" stating that he understood that the police department "used a communications monitoring device similar to a reel-to-reel audio recording machine" and that he understood "that this system recorded telephone calls and radio traffic to or from [the police] department on both a primary and back-up set of 24 hour reel-to-reel tapes." Davila then requested "access to [the police] department's collection of the above described reel-to-reel tapes. This request specifically include[d] the data that was recorded on both the primary and back-up tapes that [the police] department used over the years during the time that such a tape recording system was used." He also requested access to all entries placed in the police department's log for the tapes to which he referred.

{¶3} Counsel for the Bellefontaine Police Department responded to Davila's letter on May 7, 2009. This letter acknowledged receipt of Davila's April

29, 2009 records requested and informed Davila that counsel would be assisting the police department in responding to Davila's requests. Counsel then indicated that they wanted to properly understand Davila's requests and noted that they understood Davila's request to be for "reel-to-reel tapes (primary and backup) from the entire time period that the police department used this system of organization" and all entries in its log for incoming and outgoing calls for service for all of these tapes. Davila was requested to contact counsel for the police department if they had misunderstood or misarticulated his request, noted that their initial estimates involved more than 160 tapes, that each tape contained twenty-four or more hours of data on it, and that they were concerned that Davila's request was overly broad in a manner that left them unable to comply. The letter also requested that Davila contact counsel for the police department if he wanted copies of these records and that the police department might charge him the cost of producing these materials. The letter concluded with the following paragraph: "To be clear, this is not a denial of your request; however, we need more information to accurately respond. Please contact me at your earliest convenience so we may discuss this further."

{¶4} Davila did not respond to this letter. On May 27, 2009, counsel for the police department mailed another letter to Davila. This letter contained much of the same information provided in counsel's first letter sent earlier in the month.

-3-

This time Davila responded on June 8, 2009, by writing a letter, which was addressed to Chief Kunze.

{¶5} This letter stated that Davila was writing to Chief Kunze because he was the person responsible for responding to public records requests but that he was also sending a copy of the letter to counsel for the police department. Davila expressed concern that the police department was evading his request for public information, that he did not believe his requests were overbroad due solely to the size of the requests, and that the chief appeared to know exactly what records he was requesting. Davila then explained his understanding of what reel-to-reel tapes were ("Dictaphone or Dictatape recorder"), what they recorded, the manner in which they recorded, that backup recordings were also made for each tape, and that the police chief appeared to have underestimated the number of tapes involved because the number provided by counsel would have only covered 80 days when Davila was convinced that the recorder would have been used for longer than 80 days. Davila once again wrote that the police chief appeared to know exactly what records he was requesting, that his request was not vague or overbroad, and that he believed the police chief was evading his requests by demanding that he clarify them. Davila noted that the public records laws required them to work together but that the police department needed to explain how its records are maintained and accessed in the ordinary course of business so that he could revise his request.

{¶6} Counsel for the police department responded to Davila's second letter on June 19, 2009. Counsel indicated that the police department had no intention of impeding Davila's access to these records and proceeded to explain the police department's reasons for requesting additional information from Davila. More specifically, this letter informed Davila that the tapes he was requesting were reviewed using a Dictaphone Veritrac 9000 but that the one owned by the police department was inoperable and expensive to repair. Thus, the police department was inquiring as to whether Davila had his own means to review the tapes or would obtain such means. This letter also informed Davila that these recordings were not contained on reels after November of 2007, and that the last cycle of retained reels covered 120-days, pursuant to the department's records retention schedule and that the quality of the 120-days of tapes many have been diminished.

{¶7} On July 2, 2009, Davila filed this action for a writ of mandamus to compel respondents to provide the requested records, and, alternatively, for civil forfeiture pursuant to R.C. 149.351 because, according to the complaint, the respondents unlawfully destroyed the reel-to-reel tapes. That same day, Davila filed requests for admissions to be answered within twenty-eight days of service. The complaint and summons were served on the respondents on July 8, 2009.

{¶8} On August 6, 2009, the respondents filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B)(6). In this motion, the respondents alleged that Davila's public records request was overly broad and that the action was not ripe. In addition, the respondents filed a response to Davila's requests for admissions, denying each request for admission pending the outcome of the motion to dismiss and noting that if the motion to dismiss was overruled, they would answer the requests for admissions in accordance with the Rules of Civil Procedure. On August 18, 2009, Davila filed a motion for all of his requests for admissions to be taken as admitted because the respondents failed to comply with the mandates of Civ.R. 36 regarding the timing and proper method of responding to a request for admissions.

{¶9} A hearing on a number of motions filed by the parties was held on September 9, 2009. As a result of this hearing, the trial court overruled the respondents' motion to dismiss. In addition, the trial court ordered that the respondents answer Davila's request for admissions, as they indicated in their prior answer that they would, within fourteen days and ordered that Davila's motion to deem these requests admitted be held in abeyance. The respondents were also ordered to file an answer to the complaint within fourteen days. The record reflects that the respondents complied with these orders of the court.

Subsequently, the respondents filed an amended answer with the trial court's permission.

{¶10} Both Davila and Chief Kunze were deposed and both later submitted their respective personal affidavits when the parties filed motions for summary judgment. Chief Kunze testified that he began working as a police officer with the Bellefontaine Police Department in 1978. Prior to becoming the chief of police in 1991, the prior chief assigned him the task of researching and preparing a proposal for the installation and use of a recording system for the police department. This assignment resulted in the police department installing and using the reel-to-reel recording system at issue in this case. Although Chief Kunze could not give the exact start date for the system's use, he agreed that the machine recorded the requested data from at least January 1, 1992. He further testified that this reel-to-reel recording system contained three decks: deck one would record an entire day (24-hour period) of calls in real time; the second deck would begin recording the following day (24-hour period) of calls in real time once deck one stopped recording; and the third deck was voice-activated and acted as a "scratch deck," which was used in the event that information needed to be copied or extracted without the need to interfere with the tapes that were being created so that information could be preserved. He also testified that none of these decks created

"back-up" tapes because none of the decks recorded the same information simultaneously.

{¶11} Chief Kunze further explained that the tapes recorded information from certain telephones within the department rather than from certain lines. Initially, the tape recorder had ten input channels and recorded police radio traffic, dispatch calls to the Bellefontaine Fire Department, dispatches to the sheriff's office, municipal court proceedings, and city council meetings. At some point, the municipal court developed its own recording system and no longer recorded through the police department. Also, the city administration eventually elected not to have the police department record its council sessions.

{¶12} Chief Kunze also testified that when he received Davila's first letter requesting all of the reel-to-reel tapes, he consulted with legal counsel about how to properly respond because he had never previously received a request of this scope and because the police department did not make back-up tapes, which was part of Davila's request. He was also unsure about how Davila would be able to listen to the tapes and whether Davila had the means to listen to them because the machine the police department used to listen to the tapes no longer functioned.

{¶13} Davila testified that he sent the letter requesting the reel-to-reel tapes made by the Bellefontaine Police Department during the time it used these tapes but that he did not know at the time he wrote the letter how long the reel-to-reel

system had been used by the police department. Davila further testified that he had no time limits in his request: if the department used the system for ten years, he wanted all ten years' worth of tapes; if it used the system for thirty years, he wanted all thirty years' worth of tapes. Davila also anticipated receiving at least 730 tapes for each year going back as long as the department had used that recording system (2 tapes for each day of the year because he initially thought that the police department also made a back-up tape of each day).

{¶14} When asked if he was looking for any specific information in the tapes and logs he requested, Davila testified that he wanted to sample the spectrum of the tapes to then determine issues like response time or if anything was significant within the sampling of tapes because in his home county there was a proposal to change or modify the 9-1-1 system and he "wanted to determine how things were in other counties." (Davila Depo. at p. 26.)

{¶15} Davila further explained his reasons for wanting the tapes in his affidavit. In his affidavit, Davila averred that in his home county, Stark County, a debate was "raging" about the implementation of an emergency 9-1-1 county wide dispatch service, which resulted in a county sales tax being implemented by the county commissioners and later overturned by a voter referendum, leaving uncertainty in the funding of a county wide dispatch service. According to Davila, he began to question whether advances in technology over the years actually aided

in the rendering of emergency services, including questioning how long it took for an officer on the street who made an inquiry about the status of someone's license, registration, or possible warrants to acquire that information and how long it took between the time a citizen called for help and when that help was "mobilized and headed their way." Davila Aff., at ¶¶ 10-18. Davila further averred that he sought information from different parts of the State in order to analyze whether geographical location had any impact on the data he was collecting and that he wanted the actual tapes rather than logs in order to ensure the precise time frames because logs were subject to human error.

{¶16} During his deposition, Davila testified that he believed he was aggrieved when he made his request and was not provided the items he sought in that request. He also testified that, in addition to the costs and fees associated with this litigation, he has possibly suffered economic harm because he was attempting to conduct a study that he could no longer conduct, there was no way to publish the study he was attempting to conduct, and thus, he had no way to gain any notoriety or interest from any such study.

{¶17} In October of 2009, counsel for the respondents informed Davila's counsel that the police department for the City of Dublin, Ohio, had a machine capable of playing the reel-to-reel tapes and was willing to allow Davila to listen to the tapes at its office at a mutually agreeable time. The parties met in

December of 2009, at the Dublin Police Department for a few hours and Davila listened to portions of some of the tapes. However, in his deposition, Davila testified that he did not listen to any more because he did not believe that this was "a significant population of tapes to do a sampling from * * * in order to obtain then an appropriate analysis." (id. at p. 61.)

{¶18} Both sides filed motions for summary judgment. The respondents asserted, inter alia, in their motion for summary judgment that they produced the police logs sought by Davila; that Davila's requests were overbroad; that even if the requests were not overbroad, Davila was not an "aggrieved" party who could recover a civil forfeiture; and that he was provided access to all of the requested tapes that the police department had in its possession pursuant to its records retention policy.

{¶19} In Davila's motion for summary judgment, he contended that there was no genuine issue of material fact that he requested certain public records, that the respondents destroyed those records unlawfully, and that he was entitled to $1,000.00 per violation pursuant to R.C. 149.351- the civil forfeiture provision. In support of his argument that the respondents unlawfully destroyed the requested records, Davila relied upon his request for admissions as if all matters contained therein were admitted because he had previously asked the trial court to take them as admitted due to the respondents' failure to timely respond to his request.

-11-

{¶20} The parties filed responses in opposition to each other's respective motions for summary judgment. In Davila's response, he noted, inter alia, that the respondents were barred from raising the argument that his public records request was overbroad because they failed to raise this as an affirmative defense in either their answer or amended answer. He also maintained that there were genuine issues of material fact regarding whether the records retention policy was properly adopted and if the policy was properly adopted, whether the reel-to-reel tapes that were destroyed prior to its adoption were, nonetheless, unlawfully destroyed.

{¶21} On December 6, 2010, the trial court overruled Davila's motion for summary judgment, granted summary judgment in favor of the respondents, and dismissed Davila's complaint in its entirety, thereby denying his petition for a writ of mandamus and his request for civil forfeiture. The trial court found that although there were genuine issues of material fact regarding whether the records retention policy at issue was properly passed and whether the tapes were lawfully destroyed, summary judgment in favor of the respondents was proper because Davila's records request was not properly made because it was overly broad. This appeal followed, and Davila now asserts five assignments of error for our review.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT FOUND THAT "RELATOR HAS NOT IDENTIFIED WITH SPECIFIC CLARITY THE**

**RECORDS REQUESTED AS THE REQUEST WAS TOO BROAD" BECAUSE DAVILA IDENTIFIED THE RECORDS HE SOUGHT WITH REASONABLE CLARITY AND APPELLEES UNDERSTOOD WHICH RECORDS WERE BEING REQUESTED DURING THE COURSE OF THE PROCEEDINGS BELOW.**

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED TO DAVILA'S PREJUDICE WHEN IT FOUND THAT APPELLEES HAD PROPERLY RAISED THE AFFIRMATIVE DEFENSE OF AN OVERBROAD PUBLIC RECORDS REQUEST EVEN THOUGH THAT DEFENSE HAD NOT BEEN PLED IN A RESPONSIVE PLEADING.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT FOUND THAT THERE WAS A "GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER OR NOT THE RETENTION SCHEDULES WERE PROPERLY PASSED AND THE TAPES DISPOSED OF IN ACCORDANCE WITH THOSE SCHEDULES."**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT FOUND THAT THERE WAS A GENUINE ISSUE OF FACT AS TO WHETHER RECORDS WERE DESTROYED WITHOUT PRIOR NOTICE TO THE OHIO HISTORICAL SOCIETY AS REQUIRED BY R.C. 149.39.**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED WHEN IT *DE FACTO* DENIED DAVILA'S MOTION TO HAVE HIS REQUESTS DEEMED ADMITTED BECAUSE OF APPELLEES UNTIMELY**

**RESPONSE THAT MADE A "BLANKET" GENERAL DENIAL.**

{¶22} For ease of discussion, we elect to address some of the assignments of error out of order and to address assignments of error that are interrelated together.

*Fifth Assignment of Error*

{¶23} In Davila's fifth assignment of error, he contends that the trial court erred in failing to grant his motion to have all of his requests for admissions deemed admitted by the respondents. In support of this position, Davila asserts that the response to these requests was filed on August 6, 2009, one day after it was due and that the respondents provided only a general denial to all of his requests for admissions rather than responding with specificity as required by Civ.R. 36.

{¶24} We previously addressed an issue similar to the one presented here in *State ex rel. Davila v. City of Bucyrus*, 3rd Dist. No. 3-10-20, 2011-Ohio-1731. In that case, the City of Bucyrus responded to Davila's request for admissions a little more than a month after they were due and while discovery was ongoing. *Id.* at ¶ 31. This failure to timely respond resulted in admissions by default, and the trial court found that it was without discretion to provide the respondents with relief from these admissions. *Id.* at 28. This Court disagreed, noting that the trial

court had discretion to grant an extension of time to respond to the request for admissions pursuant to Civ.R. 6(B)(2), that it had discretion to accept late responses to the request for admissions, and that, pursuant to Civ.R. 36(B), the trial court had discretion to allow the respondents to withdraw or amend their responses to the requests for admissions if (1) doing so would aid in hearing the merits of the case and (2) Davila was not able to demonstrate prejudice resulting from the withdrawal or amendment. *Id*. at ¶ 29 (citations omitted.) Based upon the record, we concluded that the respondents sufficiently demonstrated that allowing withdrawal or amendment of the admissions would have aided in hearing the merits of the case and that Davila failed to demonstrate that he would suffer prejudice as a result. *Id*. Thus, we reversed the trial court's grant of summary judgment in favor of Davila, which was based upon the deemed admissions, and remanded the matter to the trial court. *Id*. at ¶ 40.

{¶25} Here, although the respondents did not strictly comply with the mandates of Civ.R. 36(A) to quote each request for admission immediately preceding the corresponding answer or objection, they did not completely fail to respond. In addition, the respondents contemporaneously filed a motion to dismiss based upon their position that the case was not ripe and that the records request was overbroad. In this motion, they specifically noted that they were seeking to more fully respond to the request for admissions if their motion to

dismiss was overruled. After overruling the motion to dismiss, the trial court, in effect, granted the extension of time to respond to the request for admissions by ordering that the respondents respond to these requests within fourteen days, which they did. Although the trial court never specifically ruled on Davila's motion to have the request for admissions taken as admitted, which it had earlier held in abeyance, by allowing the respondents additional time to respond and by later granting summary judgment in favor of the respondents, the trial court effectively denied Davila's motion.

{¶26} As was the case in *State ex rel. Davila v. City of Bucyrus*, by allowing the respondents additional time to respond to the request for admissions, the trial court was aided in hearing the merits of the case rather than entering what would have amounted to a default judgment against the respondents, who, clearly, were actively litigating the merits of the case. Further, the discovery phase of this litigation was in its early stages and Davila has failed to show how he suffered any harm, other than not receiving a "default" judgment, by the trial court's decision to allow an extension of time for the respondents to respond to his requests. Therefore, under these circumstances, we do not find that the trial court erred in allowing the respondents additional time to respond rather than simply deeming Davila's request for admissions as admitted by respondents. Consequently, the fifth assignment of error is overruled.

*Second Assignment of Error*

**{¶27}** In his second assignment of error, Davila maintains that the trial court erred in finding that the respondents properly asserted the affirmative defense that his records request was overbroad. More specifically, Davila contends that the respondents' claim that his records request was overly broad amounted to an affirmative defense that must have been pled in their answer, that the respondents failed to assert this in their answer and/or amended answer, and that the trial court should not have considered this claim in granting summary judgment in favor of the respondents.

**{¶28}** In this case, although the amended answer of the respondents enumerates eleven specific matters that they maintain are defenses, Davila correctly notes that the amended answer does not specifically set forth an affirmative defense that Davila's records request was overly broad.[1] However, in their amended answer the respondents acknowledged the authenticity of Exhibit A, Davila's April 29, 2009 letter to Chief Kunze, which was attached to Davila's complaint and discussed therein at paragraph # 34. While acknowledging the authenticity of this document, the respondents did not admit the allegation in paragraph # 34 of the complaint that Davila made a public records request. To the contrary, the respondents specifically qualified their answer to this allegation by

---

[1] The original answer of the respondents also did not specifically set forth an affirmative defense that Davila's records request was overly broad.

stating that they admitted that Davila *attempted* to make a public records request and then denied the remainder of this paragraph of the complaint.

**{¶29}** Additionally, the respondents denied paragraph # 39 of the complaint wherein Davila claimed that the "[r]espondents have no legally valid excuse for not allowing DAVILA to inspect and/or have access to the said '911 style' reel-to-reel audio tapes." (Relat. Complaint, Doc. # 1, at ¶ 39; Respond. Amend. Answer, Doc. # 40, at ¶ 39.) The respondents also included a paragraph in their amended answer, entitled "Second Defense", that stated that they "have already attempted to produce all records in good faith *that they are required to produce under Ohio law*." (Emphasis added.) (Resp. Amend. Answer, Doc. # 40, at ¶ 54.)

**{¶30}** The Civil Rules provide that "[a] party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Civ.R. 8(A). In addition, "[i]n pleading to a preceding pleading, a party shall set forth * * * any * * * matter constituting an avoidance or affirmative defense." Civ.R. 8(C). In determining what constitutes an affirmative defense, the Ohio Supreme Court has held that

> **[a]n affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. See *Davis v. Cincinnati, Inc.* (1991), 81 Ohio App.3d 116, 119, 610 N.E.2d 496, 498; Black's Law Dictionary (6 Ed.1990) 60. "An affirmative defense is any defensive matter in the nature of a confession and**

> **avoidance. It admits that the plaintiff has a claim (the 'confession') but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the 'avoidance').'' (Footnote omitted.) 1 Klein, Browne & Murtaugh, Baldwin's Ohio Civil Practice (1988) 33, T 13.03.**

*State ex rel. The Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187. The Supreme Court has further held that "[a]ffirmative defenses other than those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings." *Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St.3d 18, 20, 1998-Ohio-440, 688 N.E.2d 506, citing Civ.R. 8; Civ.R. 15.

{¶31} Asserting that a records request is overly broad is not in the nature of a confession and avoidance because this assertion does not admit the allegations of an R.C. 149.43(C) mandamus action or an R.C. 149.351 civil forfeiture action, i.e., it does not concede that the records request was properly made and/or that such request was unlawfully denied by the records custodian. See *State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, supra (holding that the assertion of an exception to disclosure under R.C. 149.43 is not in the nature of a confession and avoidance because such an assertion "does not admit the allegations of an R.C. 149.43(C) mandamus action, i.e., it does not concede that the requested records are 'public records.'") Therefore, the respondents' failure to raise the assertion that Davila's request was overly broad as an affirmative defense in its answer did

not preclude the trial court from considering this contention in determining whether to grant summary judgment in favor of the respondents.

{¶32} Moreover, in their amended answer, the respondents did not admit that Davila made a public records request but simply admitted that he *attempted* to do so. The respondents also denied Davila's allegation that they did not have a *legally valid excuse* for failing to allow him to inspect and/or have access to the 9-1-1 tapes, and further asserted that they attempted to produce all records in good faith that they were *required to produce under Ohio law*. Given these responses, we find that the respondents complied with the requirements of Civ.R. 8(A) by setting forth a defense to the mandamus/civil forfeiture complaint, i.e., that Davila did not follow the requirements of the public records statutes in attempting to make his public records request, which would include their position that his request was impermissibly overbroad.

{¶33} For all of these reasons, the second assignment of error is overruled.

*First Assignment of Error*

{¶34} Davila contends in his first assignment of error that the trial court erred in determining that his request was overbroad and, consequently, granting summary judgment in favor of the respondents. More specifically, Davila

maintains that his request sufficiently identified the records he was requesting, i.e. the reel-to-reel tapes, which is all that is required by R.C. 149.43(B)(2).[2]

{¶35} An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; see, also, *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, paragraph three of the syllabus, 1995-Ohio-286, 653 N.E.2d 1196. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written

---

[2] The respondents also requested that summary judgment be granted in their favor as to Davila's request for the dispatch logs because they had provided Davila access to all of the logs he requested and none of these logs were destroyed. As noted, the trial court dismissed Davila's complaint in its entirety, including the portion of the mandamus action wherein Davila was requesting that the logs be produced. Davila did not raise any issues concerning the dispatch logs in his brief to this Court. Thus, regardless of our decision as to Davila's assignments of error, we affirm the trial court's grant of summary judgment in favor of the respondents as to the dispatch logs.

stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶36} The Revised Code provides that "all public records responsive to [a] request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." R.C. 149.43(B)(1). Further, "[t]o facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying[.]" R.C. 149.43(B)(2). However,

> **[i]f a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records * * *, such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.**

Id.

{¶37} Here, the parties do not dispute that the reel-to-reel tapes constitute public records nor do they dispute that Davila sought access to these tapes from Chief Kunze, the custodian of the records. Rather, the crux of the dispute between

these parties as to this assignment of error is whether Davila made a proper public records request or whether his request was improper because it was overly broad.

{¶38} Recently, the Ohio Supreme Court upheld the decision of the Eleventh District Court of Appeals to deny a writ of mandamus to an inmate, Lambert Dehler, who had requested that he be provided "access to all the records of the prison quartermaster's orders for and receipt of clothing and shoes for a period of over seven years." *State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶¶ 1-2. Among the reasons provided by the Court in upholding the appellate court's decision was that Dehler's records request "was overbroad because he sought what amounted to a 'complete duplication' of the quartermaster's records." *Id.* at ¶ 3. The Court reiterated its previous determination that "[i]n identifying the records at issue, the Public Records Act 'does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies.'" *Id.* at ¶ 3, quoting *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 17.

{¶39} Additionally, the Court relied upon its prior precedent that the public's right to inspect a record at any time is limited when that inspection could "endanger the safety of the record or unreasonably interfere with the duties of the custodian[.]" *State ex rel. Dehler*, 2010-Ohio-5711, ¶ 5, citing *State ex rel. Nat'l*

*Broadcasting Co., Inc. v. Cleveland* (1988), 38 Ohio St.3d 79, 81, 526 N.E.2d 786. The Court noted that the evidence before the appellate court indicated that Dehler's request to inspect the records, rather than merely copying them, might have unreasonably interfered with the discharge of the prison officials' duties. *State ex rel. Dehler*, supra.

{¶40} In another public records request case, *State ex rel. Glasgow v. Jones*, the Ohio Supreme Court denied a petitioner's request for a writ of mandamus to compel Shannon Jones, a state representative, to provide copies of all e-mail messages, text messages, and correspondence she sent or received over a six-month period from January 1, 2007, until June 14, 2007. *Glasgow*, 2008-Ohio-4788, at ¶¶ 1-4. The Court found that this request for all work-related e-mail messages, text messages, and correspondence during the entire six-month tenure of Representative Jones was improper because it was overly broad. *Id*. at ¶ 19. In reaching this conclusion, the Court relied upon a number of other public records requests cases where the requests for any and all records of a particular type were found to be overbroad. *Id*. at ¶¶ 17-18.

{¶41} Among the decisions relied upon by the Supreme Court in *Glasgow*, was an opinion from the Tenth District Court of Appeals. *Id*., citing *State ex rel. Zauderer v. Joseph* (1989), 62 Ohio App.3d 752, 577 N.E.2d 444. In *Zauderer*, the relator sought a writ of mandamus ordering the respondents, the Columbus

Chief of Police, the Franklin County Sheriff, and the Superintendent of the Ohio State Highway Patrol, to comply with his public records request to make all accident reports filed on a given date available for him to inspect and/or copy. *Zauderer*, 62 Ohio App.3d at 754-755. The Tenth District Court of Appeals found that the relator's request "did not rise to the status of a request pursuant to R.C. 149.43, because it ask[ed] for all traffic reports." *Id.* at 756. The appellate court held that such a request was "first unreasonable in scope and, second, if granted, would interfere with the sanctity of the recordkeeping process itself." *Id.* Thus, the appellate court denied the writ. *Id.*

{¶42} Similar to the aforementioned cases, Davila sought access to all reel-to-reel tapes made for the entire length of time that this system was used by the Bellefontaine Police Department. In fact, Davila testified in his deposition that he did not know exactly how long the reel-to-reel tape system had been used by the police department but that he wanted all of the tapes, whether that time period was ten years or thirty years. As previously noted, Chief Kunze testified that the system had been in use as far back as January 1, 1992, and in his affidavit, which was attached to the respondents' motion for summary judgment, Chief Kunze averred that the police department ceased using this system of recording in December of 2007. Thus, this system was used for a time period in excess of fifteen years, and during its use, each of these tapes recorded an entire 24-hour

period for each day of the year. Even using a conservative estimate, Davila's request encompassed in excess of 5,000 tapes, each of which was 24-hours in length. Further, Davila also requested the back-up tapes for each of these tapes, doubling the number of records he was seeking.

{¶43} In light of these facts and the aforementioned precedent, we agree with the trial court that this was an overly broad request. Although Davila sought access to the tapes rather than copies of the tapes, his request impermissibly sought what amounted to a "complete duplication" of these records because in order to access the actual information on the tapes, as Davila testified he wanted to do, the tapes would have to be played in their entirety. Such a request is certainly unreasonable in scope.

{¶44} Furthermore, this request would unreasonably interfere with the duties of the custodian, Chief Kunze, who would need to be present or would have to have someone present on his behalf, in order to preserve the sanctity of the record. Undoubtedly, fifteen years of 24-hour tapes would take an incredible amount of time to review, even if a number of people were able to participate in this review, and this would certainly unreasonably interfere with the duties of the records custodian.[3]

---

[3] Not only would this process take an inordinate amount of time, absent participation by a large number of people over a significant amount of time, reviewing this number and length of tapes is highly implausible. Further, although Davila stated in his affidavit that he planned to conduct a random sampling of the

**{¶45}** Accordingly, we find that Davila's request did not rise to the status of a request pursuant to R.C. 149.43 because it was improperly overbroad. As such, the respondents were not obligated to honor his overly broad request, and the trial court did not err in granting summary judgment in favor of the respondents and dismissing Davila's complaint, thereby denying his request for a writ of mandamus. Thus, the first assignment of error is overruled.

*Third and Fourth Assignments of Error*

**{¶46}** In Davila's third and fourth assignments of error, he contends that the trial court erred by granting summary judgment in favor of the respondents when it found that there were genuine issues of fact regarding whether the respondents properly passed record retention schedules, disposed of a number of tapes in accordance with those schedules, and destroyed the records without prior notice to the Ohio Historical Society as required by R.C. 149.39.

**{¶47}** The Revised Code provides that a person who is aggrieved by the unlawful "removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record" may commence a civil action to recover a forfeiture in the amount of $1,000.00 per violation. R.C. 149.351(B)(2). Recently, the Ohio Supreme Court has held that in order for a person

---

population of tapes, he never specified how much information he believed an adequate random sampling would entail nor did he ever at any point prior to or during this litigation narrow his requests to the respondents for tapes covering only certain dates and/or times.

**to succeed in his civil action for forfeiture pursuant to R.C. 149.351, he must have requested public records, the public office must have been obligated to honor that request, subject to certain exceptions in R.C. 149.43(B), the office must have disposed of the public records in violation of R.C. 149.351(A), and [the person] must be aggrieved by the improper disposal.**

*Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶16 (emphasis added). Given our determination as to the first assignment of error, i.e. that Davila's request *did not rise to the status of a request pursuant to R.C. 149.43* because of its overbreadth and that as a result, the respondents were not obligated to honor the overly broad request, we find that the issue of whether the reel-to-reel tapes were disposed of in accordance with law is moot. Thus, the third and fourth assignments of error are, likewise, moot, and accordingly overruled.

{¶48} For all of these reasons, each of Davila's five assignments of error are overruled and the judgment of the Common Pleas Court of Logan County, Ohio, is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

-28-